UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

MEGAN S. CRAIL, on behalf of STACIE M.
CRAIL, *deceased*[1],

    Plaintiff,

v.

KILOLO KIJAKAZI[2],
Commissioner of Social Security,

    Defendant.

CAUSE NO. 1:20-CV-295 DRL

## OPINION & ORDER

Stacie M. Crail appeals from the Social Security Commissioner's final judgment denying her disability insurance benefits. Ms. Crail requests remand of her claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court remands the Commissioner's decision.

## BACKGROUND

Stacie Crail suffered from a variety of physical and mental health impairments. Ms. Crail's severe impairments included asthma, status post left breast ductal carcinoma treatment with left partial mastectomy and radiation therapy, obstructive sleep apnea, status post left knee acute medial meniscus

---

[1] On December 10, 2021, Stacie M. Crail's counsel filed a notice of suggestion of death, informing the court that Stacie Crail died on May 9, 2021 [ECF 30]. That same day, Megan S. Crail, Stacie Crail's daughter, moved to be substituted for her deceased mother [ECF 31]. Megan Crail says she is the only appropriately suitable party here because her mother had no surviving spouse at the time of her death, and she is the individual of "highest order of priority" to receive the decedent's "underpaid" Title II disability benefits sought by and through this action per 20 C.F.R. § 404.503(b)(5). Accordingly, the court grants her motion to substitute party [ECF 31] and will direct the clerk to substitute Megan Crail as the plaintiff. For clarity's sake, however, the court will refer to Stacie Crail as the plaintiff throughout this opinion, and any reference to Ms. Crail will be to Stacie Crail unless noted otherwise.

[2] Kilolo Kijakazi is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

tears, patellofemoral syndrome, chondromalacia patella, obesity, panic disorder, agoraphobia, depressive disorder, generalized anxiety disorder, persistent depressive disorder, and social anxiety disorder [R. 49]. She suffered from a number of other non-severe impairments including periodic limb movement disorder, left eye issues, allergic rhinitis, diabetes mellitus, and hepatic steatosis, among others [*id.*].

Ms. Crail filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income on March 21, 2017 [R. 46]. In both applications, she alleged disability beginning November 6, 2015 [*id.*]. Her claims were denied initially on September 8, 2017, and again on reconsideration on January 10, 2018 [*id.*]. Her claims were heard by an administrative law judge (ALJ) in a hearing on December 12, 2018 [*id.*]. Leslie F. Floyd, an impartial vocational expert, testified [*id.*]. In a March 18, 2019 decision, the ALJ denied Ms. Crail's claims on the basis that she was not disabled as defined by the Social Security Act [R. 56-57].

The ALJ found that Ms. Crail had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations: She could only occasionally climb ramps and stairs [R. 51]. She could never climb ladders, ropes, or scaffolds [*id.*]. She needed to avoid concentrated exposure to fumes, odors, dusts, gases, and other similar respiratory irritants [*id.*]. She needed to avoid all exposure to extreme heat; wet, slippery, or uneven surfaces; and unguarded moving machinery [*id.*]. She could understand, remember, and carry out simple instructions and tasks [*id.*]. She could make judgments on simple work-related decisions and could respond appropriately to occasional and superficial interactions with coworkers and supervisors [*id.*]. She needed to avoid work activity requiring interactions with the general public [*id.*]. She could respond appropriately to usual work situations, and she could deal with routine changes in a routine work setting [*id.*]. The ALJ found that Ms. Crail was unable to perform any past relevant work [R. 55].

However, the ALJ found that she could perform a significant number of jobs in the national economy [R. 55-56]. The decision became final when the Appeals Council denied a request for review [R. 1-4].

## STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual functional capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant

3

bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

Ms. Crail challenges the ALJ's conclusion that she is not totally disabled. She presents two arguments of error: (1) the administrative decision didn't adequately assess the opinions of the state agency psychologists; and (2) the administrative decision crafted an RFC that didn't include any time off task to account for Ms. Crail's severe mental health conditions.

    A.    *State Agency Psychologists.*

Ms. Crail asserts that the administrative decision didn't properly consider the opinions of the state agency psychologists. On July 10, 2017, one state agency psychological consultant, Dr. Kenneth Neville, completed a records review at the initial determination level [R. 53; 152-178]. He concluded that Ms. Crail had "mild" limitations in understanding, remembering, or applying information and in adapting or managing oneself and that she had "moderate" limitations in interacting with others and concentrating, persisting, or maintaining pace [R. 158; 171]. In the additional explanation section of his report, he said, "Overall, the totality of evidence suggests [claimant] is capable of semi-skilled work that has limited interaction with the general public and coworkers" [R. 162; 175].

On January 9, 2018, another state agency psychological consultant, Dr. Donna Unversaw, completed a records review at the reconsideration level [R. 53; 181-214]. She found the same mild and moderate limitations as Dr. Neville in the 'B' criteria of the listings [R. 190; 207]. She also reached the same overall conclusion—that Ms. Crail is capable of semi-skilled work that has limited interaction with the general public and coworkers [R. 194; 211].

"The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, 20 (July 2, 1996). The ALJ generally gives more weight to medical opinions from treating sources, 20 C.F.R. § 404.1527(c)(2), but the ALJ must

4

evaluate every medical opinion she receives regardless of its source, 20 C.F.R. § 404.1527(c). "Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence . . . as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1); *see also* 20 C.F.R. § 404.1527(e) (noting that the rules in § 404.1513a apply to evidence from federal or state agency medical or psychological consultants).

Here, the ALJ considered the opinions of Dr. Neville and Dr. Unversaw and gave them "some weight" [R. 53]. She said these are "non-examining opinions, but they are somewhat consistent with the objective record as a whole" [*id.*].[3] She also said the hearing-level evidence supported further restrictions to moderate limitations and unskilled work [*id.*]. Ms. Crail acknowledges that the ALJ gave these opinions some weight, but she argues that the ALJ erred by not mentioning the state agency psychologists' "checkbox" opinions that Ms. Crail would be prone, at least some of the time, to intolerable workplace behaviors and time off task as a result of her psychological impairments. Ms. Crail says this is harmful error because the vocational expert testified that significant off-task time would render an individual unemployable [R. 118-19].

To advance this argument, Ms. Crail cites *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). There, the court of appeals said that, though an ALJ may rely on the narrative explanation from a doctor, "the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms[.]" *Id.*

---

[3] Ms. Crail cites *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). There the court of appeals said, "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." In that case, the problem was that "the ALJ did not provide a valid explanation for preferring the record reviewer's analysis over that of the agency's *examining* doctor." *Id.* (emphasis added). Ultimately, *Beardsley* isn't quite on point here because Dr. Neville and Dr. Unversaw were non-examining doctors, as the ALJ noted in her decision [R. 53].

5

Ms. Crail notes that in the checkbox section of their opinions, each of the state agency psychologists found that Ms. Crail is "moderately limited" in the ability to work in coordination with or in proximity to others without being distracted by them, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to interact appropriately with the general public [R. 174; 193]. She further notes that, in the narrative section of their opinions, the psychologists mentioned that Ms. Crail "does not leave the house alone," "[d]oes not handle stress well," and has a tolerance for "limited interaction with the general public and coworkers" [R. 175; 194].

The administrative decision included a limitation as part of the RFC that Ms. Crail "should avoid work activity requiring interactions with the general public" [R. 51]. Therefore, Ms. Crail's assertion that the decision should have more meaningfully considered the psychologists' checkbox limitation on Ms. Crail's ability to interact appropriately with the general public or the psychologists' conclusion in the narrative section that Ms. Crail is capable of limited interaction with the general public is of no import here. The limitation was included in the RFC. Any alleged error in reviewing these parts of the psychologists' opinions would be harmless. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (error is harmless when it "would not affect the outcome of th[e] case").

Ms. Crail argues that the administrative decision provided no explanation for why she was limited to occasional and superficial interactions with coworkers and supervisors but no work activity requiring interactions with the general public. She says the state agency psychologists didn't articulate a greater limitation in interacting with the public than with coworkers. This isn't true. In the "social interaction limitations" section of the checkbox limitations, the psychologists said Ms. Crail was moderately limited in the ability to interact appropriately with the general public but not significantly limited in the ability to ask simple questions or request assistance, the ability to accept instructions and

6

respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness [R. 174-75; 193-94].

The administrative decision limited Ms. Crail to occasional and superficial interactions with coworkers and supervisors, but Ms. Crail says this wasn't enough because superficial interactions would include taking instruction, working in coordination, and even taking criticism. She says the ALJ's conclusion here clashes with the state agency psychologists' checkbox and narrative opinions. That isn't so; the psychologists found Ms. Crail was not significantly limited in these types of social interaction abilities. Whether it can be said that the ALJ ignored these parts of the checkbox limitations, it wouldn't change the result. *See Skarbek*, 390 F.3d at 504.

Ms. Crail says the administrative decision ignored the parts of the psychologists' narrative opinions that indicated Ms. Crail didn't leave the house alone and didn't handle stress well. For context, each of the narrative opinions indicates that "[Ms. Crail] states that she does not leave the house alone [because] she fears getting lost and cannot handle being around large groups of people (five)" [R. 162; 175; 194; 211]. The psychologists' recitation of Ms. Crail's subjective complaint about not leaving the house alone isn't a medical opinion. *See Kernstein v. Kijakazi*, 2021 U.S. Dist. LEXIS 221867, 6-7 (N.D. Ind. Nov. 17, 2021) (observations reflecting a claimant's own subjective complaints about her symptoms aren't a medical opinion); *Wieczorek v. Colvin*, 2014 U.S. Dist. LEXIS 104447, 23 (N.D. Ill. July 31, 2014). The statement that Ms. Crail "[d]oes not handle stress/change well" is included in the "Adls" (activities of daily living) section of the narratives [R. 162; 175; 194; 211]. The psychologists didn't indicate from where in the records they pulled this information.

Ms. Crail testified to these same facts at the hearing before the ALJ. She testified that high-stress situations might trigger panic or anxiety [R. 86]. She further testified that "[b]etween the anxiety and the depression, sometimes it's very difficult to even leave the couch" [R. 88]. She said she isn't

7

able to run errands independently because she gets "too anxious, afraid of getting lost or getting to the place [she] need[s] to go and there's just too many people around" [R. 89].

When discussing why the ALJ gave the state agency psychologists' opinions only some weight, the ALJ said the "hearing level evidence, however, supports further restrictions to moderate limitations and unskilled work" [R. 53]. In other words, even if the ALJ ignored these facts from the psychologists' narrative opinions, they were once again presented to her at the hearing, and the ALJ relied on the evidence from the hearing in crafting the RFC. *See Skarbek*, 390 F.3d at 504. This issue doesn't warrant remand then.

The only remaining checkbox limitation that the administrative decision allegedly ignored is the psychologists' finding that Ms. Crail is "moderately limited" in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods [R. 174; 193]. The court addresses this issue in tandem with Ms. Crail's second overarching point, which is that the ALJ crafted an RFC that didn't include any time off task to account for Ms. Crail's severe mental health conditions.

B.  *Time Off Task.*

Ms. Crail says the administrative decision erred in assessing an RFC that didn't reflect any need for time off task to address her mental health symptoms. She says this resulted from the decision's failure to consider the checkbox limitation from the state agency psychologists, the opinions from Ms. Crail's treating mental healthcare provider, and the opinions from a third-party medical consultant.

An ALJ's RFC and hypothetical questions posed to the vocational expert must incorporate all of the claimant's limitations supported by the medical record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). That said, an RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*,

8

362 F.3d 995, 1000 (7th Cir. 2004). An RFC determination is a legal decision rather than a medical one. *See Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 SSR LEXIS 5 at 1.

The state agency psychologists each noted that Ms. Crail was "[m]oderately limited" in "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" [R. 174; 193]. The ALJ didn't include this checkbox limitation in the RFC or in the hypothetical that she posed to the vocational expert. An ALJ must adequately account for the limitations identified in the checkbox section of the forms. *See DeCamp*, 916 F.3d at 676. Although the ALJ afforded some weight to the psychologists' bottom-line conclusion that Ms. Crail was able to perform semi-skilled work with limited interaction with coworkers and the public and, in fact, decided the hearing-level evidence supported further restrictions to moderate limitations and unskilled work [R. 53], the ALJ still erred by not giving the vocational expert a basis to evaluate all of Ms. Crail's impairments, including this one in concentration, persistence, and pace. *See DeCamp*, 916 F.3d at 676; *Mandrell v. Kijakazi*, 2022 U.S. App. LEXIS 3473, 10-11 (7th Cir. Feb. 8, 2022) (vocational expert's testimony is "only as good as the hypotheticals—and they failed to capture the full picture").

As it turns out, this error is not harmless because the vocational expert testified that the need for time off task would have changed her answer. The vocational expert testified that "[t]hese jobs do not allow one to walk around for 20 or 35 minutes. You might get up and stretch, move a little bit as long as you can stay on task. But you cannot walk around and leave your workstation and still get the job done" [R. 118]. She further testified that "it's like I was saying earlier, if you leave your workstation,

9

you can't do your job. You're not going to be a productive employee, so no, you cannot leave the workstation for an hour and maintain employment" [R. 119].

Ms. Crail asserts that her case is directly analogous to *DeCamp*; in response, the Commissioner doesn't mention *DeCamp* or attempt to distinguish it. The Commissioner argues that the ALJ didn't have to address the psychologists' checkbox limitations because they weren't incorporated in the bottom-line conclusions, but this is a misstatement of the law. *See DeCamp*, 916 F.3d at 676. Ultimately, remand is appropriate so that the ALJ can either include this limitation in the RFC and the hypotheticals or explain why it is proper to exclude this checkbox limitation. *See id.*; *Spry v. Kijakazi*, 2022 U.S. Dist. LEXIS 5081, 8-9 (N.D. Ind. Jan. 11, 2022) (Miller, J.) (remanding because the ALJ didn't account for the state agency psychologist's checkbox limitation indicating that the claimant was moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods).

One of Ms. Crail's treating providers, Karen Lothamer, M.S.N., C.N.S.-B.C., likewise indicated a need for time off task. Ms. Lothamer opined that Ms. Crail would be absent from work more than three days per month and could remain on task less than 70% of the workday [R. 54; 1724]. A treating doctor's opinions are to be awarded controlling weight if well supported by accepted clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527; SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996); *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009).[4] When assessing whether to afford a treating physician's opinions less than controlling weight, the ALJ must consider the length, nature, and extent of the treatment relationship, frequency of

---

[4] On January 18, 2017, the Commissioner published new regulations regarding the evaluation of medical evidence in relation to 20 C.F.R. §§ 416.927 and 404.1527. 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The new regulations only apply to claims filed on or after March 27, 2017. *Id.* Ms. Crail's claims were filed on March 21, 2017, so the preceding regulatory scheme applies.

examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527.

Here, the administrative decision afforded Ms. Lothamer's opinion "little weight" [R. 54]. The administrative decision said: "It is not entirely consistent with the evidence as a whole. The mental status findings have been generally normal on many occasions, which is inconsistent with the need for such unexplained absences or time off task. (Exhibit B4F/4)" [*id.*]. Exhibit B4F contains Ms. Crail's progress notes from Parkview Physicians Group. Interestingly, on the page cited, the mental status notes say: "Cognitive function: she indicates Having problems with mood swings, short term memory and concentration difficulties" [R. 453]. The decision didn't offer a good reason for affording Ms. Lothamer's opinion "little weight" when the only cited exhibit to show that Ms. Crail's "mental status findings have been generally normal on many occasions" actually included complaints from Ms. Crail about mood swings and short-term memory and concentration difficulties. *See Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("ALJ must offer 'good reasons' for discounting the opinion of a treating physician"). For this reason, too, the court must remand.

Ms. Crail briefly indicates in one conclusory sentence that the ALJ didn't adequately consider the opinions of a third-party medical consultant, Candace Martin, Psy.D. [ECF 20 at 20]. In her reply brief, Ms. Crail doesn't mention Dr. Martin; she only argues that remand is necessary so that the ALJ can properly assess the opinions of the state agency psychologists and Ms. Lothamer [ECF 29 at 5]. Ms. Crail has waived any argument on this point. *See Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (underdeveloped arguments are waived).

## CONCLUSION

Accordingly, the court GRANTS Ms. Crail's motion to substitute parties [ECF 31], DIRECTS the clerk to substitute Megan S. Crail as the plaintiff in this action, GRANTS Ms. Crail's request for

remand [ECF 20], and REMANDS the Commissioner's decision for consideration in light of this ruling.

SO ORDERED.

February 10, 2022                                         *s/ Damon R. Leichty*
                                                          Judge, United States District Court